IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN C. WOOD,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>AT&T CORP.,<br><br>　　　　　　　　Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 2:05 CV 131 |

　　　　Plaintiff John C. Wood filed this lawsuit claiming that his former employer, AT&T Corp., interfered with his right to receive leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611 to 2654. Mr. Wood also alleges that his employment with AT&T was improperly terminated as a direct result of AT&T's failure to grant him requested leave.

　　　　Before the court is AT&T's motion for summary judgment on Mr. Wood's claims. AT&T argues that it granted Mr. Wood the FMLA leave that he requested and also allowed Mr. Wood to miss additional work days even though Mr. Wood failed to gain approval for those additional absences. Accordingly, AT&T argues that it not only complied with its FMLA obligations, but actually exceeded those requirements. Further, AT&T asserts that Mr. Wood was not penalized for taking leave, whether approved or unapproved, and that his termination was necessitated by Mr. Wood's inability to meet performance requirements.

　　　　The parties dispute whether Mr. Wood requested additional FMLA leave time, which possibly would have excused his otherwise unapproved absences. Further, it is not clear from the record whether AT&T would have imposed different performance criteria on Mr. Wood if

extended FMLA leave had been granted. Accordingly, AT&T has not established that it is entitled to summary judgment.

## Background

Mr. Wood began his employment with AT&T as an account executive in the Growth Markets groups. After working in that capacity for several months, Mr. Wood was reassigned to a new organization known as the Emerging Markets group. His primary responsibility on the Emerging Markets group was to acquire new business for AT&T. Executives in the Emerging Markets group were held to a high performance standard and AT&T would quickly implement corrective measures in the event an executive's performance failed to meet expectations.

*Mr. Wood Takes Leave*

About two years after Mr. Wood began working with AT&T's Emerging Market Group, he began to have difficulty sleeping and started to experience periodic panic attacks. On occasions, Mr. Wood suffered panic attacks while at work. A short time after those problems began to surface, AT&T denied Mr. Wood access to his floor of the company office building, citing employee concerns about his behavior. Soon thereafter, AT&T investigated Mr. Wood for improper account sales activities. Although exonerated, Mr. Wood was without his laptop during the investigation. While all these events were unfolding, Mr. Wood began to seek professional treatment for his insomnia and panic attacks.

A few months later, on January 19, 2003, Mr. Wood e-mailed his manager, Richard Sheldon, and requested a medical leave of absence to pursue aggressive treatment for his condition. The e-mail specifically referred to the FMLA and requested that Mr. Sheldon complete a form so that Mr. Wood could forward the completed form to AT&T's FMLA center.

The information that Mr. Wood submitted to AT&T's FMLA center shows that he

requested FMLA leave to run from February 3, 2003, until April 19, 2003.  He chose the start date for his requested leave after speaking to an AT&T FMLA representative, who informed Mr. Wood that he could use accumulated paid-leave days through February 3, 2003, and that those days would not be counted against the amount of FMLA leave to which he was entitled. Complying with a request from AT&T, Mr. Wood also submitted a medical certification prepared by his psychiatrist, Mark Neuman, M.D., in support of his leave request.  In the medical certification, Dr. Neuman stated his opinion that Mr. Wood would need to be absent from work for three months.

      Also in January of 2003, Mr. Wood learned about AT&T's Disability Plan, which provides short-term disability benefits and leave to qualifying employees.  AT&T's Disability Plan is administered by MetLife, a separate company from AT&T.  In fact, AT&T's FMLA center is located in New Jersey, while the MetLife office that handles the Disability Plan is located in Kentucky.

      Mr. Wood received information outlining the Disability Plan.  The documentation received by Mr. Wood states that if an employee qualifies for both FMLA leave and the Disability Plan, the leave taken under those programs runs concurrently.  Mr. Wood obtained the necessary forms and applied for disability leave shortly after submitting his formal request for FMLA leave.

      AT&T ultimately approved Mr. Wood's for participation in the Disability Plan.  A short time later, AT&T granted Mr. Wood's FMLA request.  AT&T informed Mr. Wood that his FMLA leave would run from January 20, 2003 until May 20, 2003.  The record indicates that AT&T began Mr. Wood's FMLA leave on January 20, 2003, because Mr. Wood had been approved to start on the Disability Plan on January 20, 2003, and AT&T wanted to synchronize

the start dates of the leave granted under the two programs.[1]

Mr. Wood was granted disability leave through March 17, 2003.  But his FMLA grant extended until May 20, 2003.  During his deposition, Mr. Wood testified that he was confused by the FMLA grant because he believed that he was only entitled to twelve weeks of leave under the FMLA.  The document approving Mr. Wood's FMLA leave, although far from a model of clarity, appears to contemplate two types of leave: full-time leave and intermittent leave.  The most plausible reading of the FMLA grant is that Mr. Wood was given full-time leave to run for the duration of his disability coverage and intermittent leave for doctor's visits thereafter.  But for the purposes of this motion, the court accepts that Mr. Wood was understandably confused by the documentation granting his FMLA request.

As March 17 approached, Mr. Wood contacted AT&T's disability office to request an extension of his disability leave.  Mr. Wood submitted further medical documentation to the disability office in support of his request.  The disability office informed Mr. Wood that an extension was not warranted based on documents he had submitted.  Mr. Wood then asked the disability office if he could abandon disability coverage and rely solely on the FMLA.  The office informed Mr. Wood that the disability office and AT&T's FMLA center operated independently of one another and that the disability office could not help him with FMLA questions.

Mr. Wood returned to work on March 18, but arrived late due to a panic attack he

---

[1] Mr. Wood asserts that "AT&T interfered with [his] FMLA statutory entitlement to receive FMLA leave during both January 2003 and April 2003."  (Plf.'s Memo. in Opp'n to Def.'s Mot. for Summ. J. 10 (dkt. #20).)  But Mr. Wood makes no argument explaining his contention that interference occurred in January of 2003.  Accordingly, the court confines its analysis to the alleged interference that occurred after the time Mr. Wood's approved disability leave ended.

suffered earlier that morning.  Mr. Wood did not work from March 19 through March 21 because he was granted bereavement leave to attend the funeral of his step-father.  While at work on March 25, Mr. Wood suffered a panic attack and left work to receive treatment.  Mr. Wood contacted the disability office, which informed him that it required further documentation before it could approve additional disability leave.  Mr. Wood did not return to work again until April 24, 2003.

Contact between Mr. Wood and the disability office continued while he was away from work.  The disability office informed Mr. Wood that if he failed to submit supporting documentation, it would be unable to retroactively grant him disability leave for his accumulating absences.  Not satisfied by the submitted documentation, AT&T ultimately denied Mr. Wood's request for additional disability leave.  Mr. Wood did not appeal that decision and returned to work on April 24, 2003.

The parties dispute whether Mr. Wood contacted AT&T's FMLA center to explore the possibility of securing FMLA leave past March 17.  Mr. Wood claims that he contacted the FMLA center and was informed that his failure to qualify for a leave extension under the Disability Plan precluded him from securing additional FMLA leave.  AT&T asserts that no such contact occurred.[2]

*Mr. Wood Is Dismissed*

---

[2] AT&T asks the court to disregard Mr. Wood's allegations regarding his contact with the FMLA center.  According to AT&T, the affidavit detailing Mr. Wood's contact with the FMLA center contradicts Mr. Wood's earlier deposition testimony.  But a review of the deposition transcript reveals that Mr. Wood equivocated when asked about his attempts to contact the FMLA center.  In fact, Mr. Wood indicated that he would need to review his own records before he would be able to provide a satisfactory answer.  Accordingly, Mr. Wood's affidavit is not inconsistent with his deposition testimony and the court is convinced that the affidavit was not prepared in an attempt to raise a sham issue of fact.

As an account executive, Mr. Wood had certain performance benchmarks that he was expected to meet on an monthly and annual basis.  Generally speaking, if an account executive was underperforming, AT&T mandated implementation of steps designed to increase sales numbers.  Stripped of its specifics, the steps AT&T would take to remedy the under performance of an account executive were as follows:

(1) If monthly sales numbers fell below a rate needed to achieve the company-imposed annual sales quota, a manager would speak with the executive and formulate a plan to boost sales numbers.

(2) If the executive's sales numbers remained below the monthly sales mark for a successive month, then the executive would be placed on Performance Improvement Plan ("PIP") A.  PIP A is essentially a thirty-day probationary period.

(3) While on PIP A, the executive's numbers are monitored and if they exceed the monthly quota, PIP A ends.  But if the executive is still not on pace to meet the annual sales requirement, PIP A is extended an additional month.  If the monthly numbers remain low during the PIP A period, then the executive is placed on PIP B.

(4) Once placed on PIP B, the executive either chooses to spend thirty paid days seeking a new job or receives a final thirty days to attempt to elevate sales numbers.  If the executive successfully elevates sales numbers, then the PIP period ended, provided that, if annual sales numbers drop below required levels in the ensuing year, the executive is returned to PIP B and is obligated to select the thirty-day job search option.

At the time Mr. Wood started his approved leave, he had been on PIP A for seventeen days.  Upon his return to work, AT&T gave Mr. Wood a "ramp-up" sales quota, which waived his March quota, reduced his April quota to half of normal, and imposed a full quota for May.

Mr. Wood failed to meet the sales numbers and, once on PIP B, selected the thirty-day job search option.  Mr. Wood's employment with AT&T ended on June 13, 2003.

## Legal Standard Governing Summary Judgment

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff."  Liberty Lobby, 477 U.S. at 252.

## Analysis

Mr. Wood's complaint alleges that AT&T interfered with his right to receive FMLA leave and that his employment was improperly terminated because AT&T imposed performance expectations that would not have applied had he been appropriately granted leave.  AT&T asserts that it is entitled to summary judgment because Mr. Wood was granted full-time FMLA leave from January 20 through March 17 and at no time did Mr. Wood request additional FMLA leave.  AT&T further argues that Mr. Wood essentially took an unpaid leave of absence from March 18 through April 23 and that Mr. Wood was not penalized for taking that leave.

"The interference or entitlement theory is derived from the FMLA's creation of

substantive rights. If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent." Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002). The parties dispute whether Mr. Wood made a request for FMLA leave that, if granted, would have excused his absences after March 17. If Mr. Wood did make a meritorious request that was improperly ignored by AT&T, it is possible that the performance requirements imposed on Mr. Wood upon his return to work in April were improper. Accordingly, summary judgment is inappropriate.

*Interference with FMLA Leave*

The FMLA allows an "eligible employee" to take up to twelve weeks of leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer can require an employee to submit a certification from a medical provider indicating that the employee is suffering from a serious health condition. Id. § 2613(a). Additionally, an employer can request recertification if an extension of FMLA leave is requested. See 29 CFR § 825.308.

The burden placed on an employee requesting leave is slight. An employee is only required to contact the employer by any number of means (including telephone) and convey that leave is needed. "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 CFR § 825.303.

AT&T did grant Mr. Wood FMLA leave. But the duration of that leave is less than clear. In a letter from Linda Noble, an AT&T health affairs FMLA counselor, AT&T informed Mr. Wood that his request for FMLA leave was approved through May 20, 2003, and that "[i]f an

intermittent leave, absences can be expected to occur approximately: [handwritten] (1) disability, (2) Dr. appt every 2 weeks." (Letter from Linda Noble to John Wood, Feb. 10, 2003, attached as Ex. 4 to Plf.'s Memo. Opposing Def.'s Mot. for Summ. J. (dkt. #20-1).) As indicated above, Ms. Noble was more than likely approving Mr. Wood for full-time FMLA leave to run concurrently with his previously approved disability leave and for intermittent leave for doctor's visits after his return to work. But given the somewhat cryptic approval letter, Mr. Wood's testimony that he was confused about the duration of his approved FMLA leave is understandable.

What is clear is that Mr. Wood knew that his disability leave would end on March 17. It is the factual dispute concerning the steps Mr. Wood took as the end of his disability leave approached that precludes the entry of summary judgment. It is undisputed that Mr. Wood at least raised the possibility of continuing to miss work by using FMLA leave instead of disability leave. It is also undisputed that Mr. Wood was informed that the disability office was separate from the FMLA center and that Mr. Wood would need to contact the FMLA center to resolve his questions concerning FMLA leave. What is disputed is whether Mr. Wood contacted the FMLA center and expressed a desire to receive additional FMLA leave. Mr. Wood asserts that he did contact the FMLA center to request leave and AT&T denies that assertion.

In its briefing, AT&T implies that this dispute is immaterial because Mr. Wood's failure to submit a formal, written FMLA request in accordance with AT&T policy is fatal to his claim. But while "[a]n employer may . . . require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave," the "failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal notice." 29 C.F.R. § 825.302(d).

The factual dispute concerning Mr. Wood's attempts to request additional FMLA leave to

9

run following the end of his disability leave precludes the entry of summary judgment on Mr. Wood's FMLA interference claim. The court notes that the parties contest whether Mr. Wood's contact with AT&T's disability office alone would be sufficient to trigger AT&T's obligations under the FMLA. But the court need not resolve that issue because the existence of disputed facts prevent the entry of summary judgment in any event.

*Mr. Wood's Termination*

Mr. Wood's claim that his employment was improperly terminated is dependent upon a finding that AT&T improperly denied him FMLA leave through March and into April. According to Mr. Wood, if AT&T had approved additional leave under the FMLA, he would not have returned to work until April and he would not have been required to meet his sales quota until the end of July of 2003. Mr. Wood states that AT&T's practice is to impose a 0% monthly sales quota on an executive returning from approved leave for the first partial month after the executive's return and the first full month following the executive's return. A 50% monthly sales quota is imposed during the second full month following the executive's return and the full 100% monthly sales quota applies to the third full month following the executive's return. Mr. Wood contends that his leave through April should have been approved and that his full monthly sales quota would not have been in effect until July if AT&T had approved his leave.

AT&T counters that Mr. Wood was not terminated for his failure to meet his monthly sales quota, but rather for his inability to meet goals related to his annual sales quota. In other words, AT&T states that while AT&T does generally provide ramp up time on monthly sales quotas, those ramp up times are inapplicable to the requirements of PIP A, which Mr. Wood was seventeen days into upon his return to work. But AT&T's argument does not rebut Mr. Wood's contention that he was potentially penalized for his absences following the conclusion of his

approved disability leave.  Under AT&T's approach, the amount of sales that Mr. Wood was required to secure in order to effectively save his job increased during the time period that Mr. Wood may have been improperly denied FMLA leave.  Because the sales that Mr. Wood needed to meet his annual sales goal increased during March and April, Mr. Wood may have suffered harm if AT&T interfered with Mr. Wood's right to receive approved leave during that time.

## Conclusion

The parties dispute whether Mr. Wood requested that his absences from work following the conclusion of his disability leave be covered by the FMLA.  Additionally, the record indicates that Mr. Wood may have been penalized by the performance requirements placed on him by AT&T due to AT&T's decision to not approve Mr. Wood's absences following the conclusion of his disability leave.  Accordingly, as the record now stands, the court is unable to enter summary judgment.  AT&T Corp.'s Motion for Summary Judgment (dkt. #14) is DENIED.

SO ORDERED this 6th day of September, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge